BACON *v.* THE MAYOR AND ALDERMEN OF SAVANNAH.

1. For a municipality to take the property of a citizen under a power conferred by the legislature to tax by local assessment, it must in all matters of substance follow the power strictly. Where the legislature authorized a municipal corporation to improve its streets and to assess on the basis of frontage the abutting real estate for two thirds of the cost of such improvements, and further provided that the municipality should be treated as the owner of all intersecting streets and should pay a just *pro rata* of the entire cost according to the frontage of the intersections, and where the mayor and aldermen passed an ordinance requiring a certain street to be improved, and assessing two thirds of the cost against the abutting owners and providing that a certain committee should furnish to each abutting owner a bill of his proportion of the cost, according to frontage, and further directed that the committee should leave out of the calculation both the frontage and the cost of the street intersections, this last part of the ordinance was contrary to the statute, and the assessment made by the committee against an abutting owner upon the plan of the ordinance was illegal, and an execution founded on the assessment against said owner was also illegal. Consequently a charge by the court that the execution was presumptively correct, and that the burden was on the defendant to show the contrary, was erroneous. This error vitiated the whole trial, and the court erred in not granting a new trial.

2. As there has been no legal apportionment of the assessment amongst the several abutting parcels of real estate, it is indispensable that such apportionment should be made. The safe course would be to make it, not through a committee, but directly by the mayor and aldermen (the municipal body), basing it upon proper evidence. There ought to be an assessment roll, showing the total cost of the work, and as to two thirds thereof, how it is apportioned amongst the several abutting parcels, including the street intersections, giving the sum chargeable to each parcel, with the name of the owner, the mayor and aldermen being treated as owner of the street intersections. This roll, when officially ascertained to be correct, should be entered on the minutes of the mayor and aldermen for due authentication and preservation. Whether any further municipal legislation on the subject may be requisite in consequence of the defect in the existing ordinance, is matter for consideration.

April 10, 1893. By two Justices. Argued at the last term.

Before Judge FALLIGANT. Chatham superior court. June term, 1892.

SAUSSY & SAUSSY and R. R. RICHARDS, for plaintiff in error.

SAMUEL B. ADAMS, *contra.*

SIMMONS, Justice.

By an act of the legislature, approved October 1st, 1887 (Acts 1887, p. 537), amending an act approved September 5th, 1885 (Acts 1884–5, p. 362), the Mayor and Aldermen of Savannah were given power and authority to adopt an ordinance requiring the grading, paving or improving otherwise for travel or drainage, any of the streets or lanes of that city, and to assess two thirds of the cost thereof on the real estate abutting on each side of the street or lane improved; the street railway company with tracks running through the streets so improved, being required to pave the width of its track and two feet on each side thereof. Authority was also given to grade, pave or otherwise improve any portion of the width of any street, and to assess two thirds of the cost against the real estate abutting on each side of the street improved. The third section of the act reads as follows: "The frontage of intersecting streets and lanes shall be assessed as real estate abutting upon the street paved or otherwise improved, and the mayor and aldermen shall be, for all the intents and purposes of this act, an owner or legal representative of real estate abutting on any street, shall possess the same rights and privileges as all other owners of real estate abutting on any street, according to the frontage owned, and shall pay from the city treasury the just *pro rata* of the entire cost of said work for the said frontage."

On May 30th, 1886, the mayor and aldermen adopted an ordinance requiring Liberty street to be paved. The ordinance directed that the street railway companies should pave their tracks as required by the statute, or if they failed to do so, that the same should be done for

them and the cost collected from the railway companies, and that " after the total cost of said work, exclusive of the frontage of intersecting streets and the work done for said railway companies, shall have been ascertained, one third of such cost shall be paid out of the city treasury, and the other two thirds from the persons owning real estate fronting on said portions of Liberty street," according to frontage. Under the ordinance the committee on streets and lanes were to have charge of the work of paving the street, and were to make out the bills for the *pro rata* cost against the property-owners, and in case the bills were not paid within thirty days after presentation, were to furnish the amount to the city treasurer, whose duty it should be to issue execution for the same. It appears that a bill was furnished Bacon, the plaintiff in error, who refused to pay the same within the time required, and an execution was issued against him for the amount, to which execution he filed an affidavit of illegality, upon various grounds set out therein, as authorized by the act of 1885. (Acts 1884–5, p. 362.) The execution and the affidavit of illegality were returned to the superior court and a trial thereon was had, which resulted in favor of the city. Bacon made a motion for a new trial, which was refused, and he excepted.

1. It will be observed that the act of 1887, in the 3d. section above quoted, treats the mayor and aldermen as owners of abutting real estate, to the extent of the frontage of intersecting streets and lanes upon the street improved, and requires them to pay from the city treasury the just *pro rata* of the entire cost of the work, according to the frontage of the intersections. Under the act, the total cost of the work done upon the street, including that done in front of the street intersections as well as upon other parts of the street improved, exclusive of the paving of the street-car tracks, must

be ascertained, and two thirds of this amount paid by the abutting owners; and the mayor and aldermen, as the owners or representatives of the street intersections, are chargeable with a share of such two thirds, in proportion to the frontage of the intersections. The ordinance, however, directs the committee to ascertain "the total cost of said work *exclusive* of the frontage of intersecting streets," etc., and to collect two thirds of such cost from the property-owners. It is therefore in direct violation of the statute, which requires the frontage of the intersections *included.* It is well settled that a municipal corporation has no power or authority to make local assessments unless the authority is clearly given; and if the mode in which the authority is to be exercised is prescribed in the act, that mode must be strictly pursued. Any departure in substance from the statute vitiates the proceedings. *D'Antignac* v. *City Council of Augusta*, 31 *Ga.* 700; *Ansley* v. *Wilson*, 50 *Ga.* 418; *Frank* v. *City of Atlanta*, 72 *Ga.* 432; 2 Dillon, Municipal Corp., 4 ed. §769 and notes. The mode adopted by this ordinance for ascertaining the cost of the improvement being different from that prescribed by the act, the assessment made thereunder against the plaintiff in error was illegal, and the execution issued to enforce the assessment was likewise illegal. The court therefore erred in charging the jury that the execution was presumptively correct, and that the burden was on the defendant to show the contrary.

2. The apportionment of the assessment amongst the several owners of abutting real estate being illegal, it is necessary, in order for the city authorities to enforce the collection of the amounts due for the work, that a legal assessment be made. We would suggest that the municipal authorities ascertain the total cost of the work upon the particular street, exclusive of the paving between the street-car tracks and two feet on each side of

the line of track, and including the cost of grading, laying asphalt, curbing, drainage, catch basins, etc.; and they may divide the street into sections, treating as separate streets the single track and double track portions. (See former decision in this case, 86 *Ga.* 305.) The total cost, thus ascertained, ought to be entered upon an assessment roll or other record, which should show, as to two thirds of it, how it is apportioned amongst the several abutting parcels, including the street intersections, and give the sum chargeable to each parcel, with the name of the owner. Perhaps this work may be done by the committee designated in the ordinance, and if so done, a report thereof should be made to the mayor and aldermen, and the same be examined by them officially, and if ascertained to be correct, should be placed upon the minutes or some other record designated by them. The safer course, however, would be that suggested in the second head-note. When this is done, the mayor and aldermen, if the owner refuses to pay, will have authority to enforce the collection of the assessment as prescribed in section 5 of the act of 1885. In a matter of such grave importance as the levy and collection of an assessment for an expensive improvement, as the evidence shows this to be, there should be some permanent record by the municipal authorities, of the character above indicated. These matters should not be left to memory and loose memoranda only, as appears to have been done in this case. According to the evidence, if Mr. Rankin, the employee who assisted the committee in making the apportionment, were to die or to remove from the State, it might be difficult, if not impossible, for the municipal authorities to ascertain the cost of this improvement.

After our decision in this case was announced, counsel for the defendant in error asked for a rehearing, which was denied; and then requested us to indicate in the

opinion the proper course to be pursued by the city authorities in regard to further municipal legislation, the same not being indicated in the head-notes which had been filed in advance of the opinion. Having ruled that the ordinance, in so far as it provides for the ascertainment of the cost and the assessment thereof amongst the property-holders, is illegal for want of compliance with the statute, and that the executions issued thereunder are illegal, we think it is necessary for the mayor and aldermen to amend the ordinance or adopt a supplementary one in accordance with what we hold in this decision. *Judgment reversed, with direction that the levy be dismissed.*